E. R. THEOBALD v. STATE.

W. S. JUDD v. STATE.

FRANK STUPENS v. STATE.

STATIONARY STEAM ENGINEER'S LICENSE ACT HELD CONSTITUTIONAL..

Act 95 O. L. 48 as amended by acts 95 O. L. 333 and 97 O. L. 28 (Rev. Stat. 4364-891 to 4364-89w; Lan. 7351 to 7362) providing for the examination and the licensing of stationary steam engineers, in that it prescribes that the rules and regulations for examinations of steam engineers shall be adopted by the chief engineer, shall be uniform throughout the state and enumerates the subjects for examination for license as such, avoids the evils of act 94. O. L. 33 held unconstitutional by the Supreme Court in *Harmon* v. *State*, 66 Ohio St. 249 [64 N. E. Rep. 117; 58 L. R. A. 618.]

[For other cases in point, see 2 Cyc. Dig., "Constitutional Law," §§ 257, 697-710; 5 Cyc. Dig., "Licenses," § 13.]

[Syllabus approved by the court.]

ERROR to Cuyahoga common pleas court.

**Ford, Snyder & Tilden,** for plaintiff in error:

Cited and commented upon the following authorities: *State* v. *Harmon*, 13-23 O. C. C. 292; *Harmon* v. *State*, 66 Ohio St. 249 [64 N. E. Rep. 117; 58 L. R. A. 618]; *State* v. *Thompson*, 160 Mo. 333 [60 S. W. Rep. 1077; 54 L. R. A. 950; 83 Am. St. Rep. 468]; Cooley, Const. Lim. (7 ed.) 163, 544; *Cincinnati, W. & Z. Ry.* v. *Clinton Co. (Comrs.)*, 1 Ohio St. 77.

**Gage & Wilbur,** for defendant in error.

**MARVIN, J.**

These cases all involve the same question and a decision of one disposes of all. Theobald was prosecuted before a justice of the peace,

Theobald v. State.

and each of the others in the police court of the city of Cleveland; each was charged with having unlawfully operated and caused to be operated a stationary steam boiler and engine, in violation of the stat-utes of Ohio; each was found guilty and the judgment in each case was affirmed, on error in the court of common pleas. Each did operate an engine and boiler in violation of the provisions of Rev. Stat. 4364-891 (Lan. 7351), which reads:

"It shall be unlawful for any person to operate a stationary steam boiler or engine in the state of Ohio, of more than thirty (30) horse power, except boilers and engines under the jurisdiction of the United States, and locomotive boilers and engines, without having been duly licensed so to do as herein provided."

It is urged that the statute under which these convictions were had is in contravention of the provisions of the constitution. Revised Statutes 4364-89q (Lan. 7356), provides:

"Any person who desires to act as a steam engineer shall make application to the district examiner of steam engineers for a license so to act, upon a blank furnished by the examiner, and shall success-fully pass an examination upon the following subjects: the construc-tion and operation of steam boilers, steam engines, and steam pumps, and also hydraulics, under such rules and regulations as may be adopted by the chief examiner, which rules and regulations, and stan-dard of examination, shall be uniform throughout the state. If, upon such examination, the applicant is found proficient in said subjects a license shall be granted him to have charge of and operate stationary steam boilers and engines of the horse power named in this act. Such license shall continue in force for one year from the date the same is issued, provided, however, the district examiner may, upon written charges, after notice and hearing, revoke the license of any person guilty of fraud in passing the examination, or who has become insane or who is addicted to the liquor or drug habit to such a degree as to render him unfit to discharge the duties of steam engineer."

Prior to the enactment of the present statute, to wit, on March 1, 1900 (94 O. L. 35), an act was passed by the general assembly on this same subject. That act, like the present one, provided for exam-inations of those desiring to operate steam engines, and one of its pro-visions was (Sec. 6):

"Any person who desires to act as a steam engineer shall make application to any district examiner of steam engineers for a license so to act, upon a blank furnished by the engineer, and if, upon exam-

ination, the applicant is found trustworthy and competent, a license shall be granted him to have charge of, or to operate any steam plant. Such license shall continue in force for one year, unless after proper hearing it is sooner revoked for intoxication or other sufficient cause, the said license to be renewed yearly.''

The act last spoken of was declared by the Supreme Court to be unconstitutional in the case of *Harmon* v. *State*, 66 Ohio St. 249 [64 N. E. Rep. 117; 58 L. R. A. 618]. In the opinion in that case it is pointed out that by the section last quoted the examiner is made the exclusive judge as to whether an applicant is trustworthy and competent. No standard is furnished by the general assembly as to qualification, and no specifications as to wherein the applicant shall be trustworthy and competent, but all is left to the opinion, finding and caprice of the examiner. He is the autocrat with unlimited discretion, without rules prescribing the qualifications of applicants for license, only so that he finds them trustworthy and competent.

The present act differs from the former act in that it is provided by the present act that the governor of the state with the advice and consent of the senate, shall appoint one chief examiner of steam engineers, and said chief examiner, with the approval of the governor, shall appoint eight district examiners.

The same provision is found in the old act in this regard, but in the present statute there is found what is not found in the old, that the rules and regulations under which examinations shall be held shall be uniform throughout the state, and that these rules and regulations shall be adopted by the chief examiner. Now it is said that practically the objections to the old statute exist as against the new.

The court said in *Harmon* v. *State, supra,* page 253, that a district examiner could in fact "make the law for his district, limited only by his will as to what shall constitute the standard of the qualification of engineers," and that this was granting legislative authority to this examiner.

Under the provisions of the present statute, as has already been shown the rules and regulations for the examination are fixed by the chief examiner and are to be uniform throughout the state, and that seems to us clearly to make him not a legislative but an administrative officer, with power only to execute the statutes enacted by the general assembly. It is said that no standard of qualifications is fixed except that upon examination the applicant must be found proficient in the subjects upon which he is to be examined. In the former act no subjects for examination were mentioned. Here the statute fixes just what

Theobald v. State.

subjects the applicant is to be examined in. How the legislature could have more definitely fixed what the examiners shall do is not easy to understand. If a percentage of answers had been fixed or a percentage of qualification had been fixed by the statute, it would still have been with the examiner to say what degree of qualification was indicated by any per cent of marking. An inspection of the statutes in relation to the examination to be given to those desiring other employments may not be found unprofitable.

Revised Statutes 559 (Lan. 890) provides for the examination of those desiring to practice law in Ohio, and reads:

"When a person applies to said court (the Supreme Court), for admission to the bar, he shall be examined by the court or two of the judges, touching his fitness and qualifications; and if, on such examination, the court or judges are satisfied that he is of good moral character, and has a competent knowledge of the law, and sufficient general learning, an oath of office shall be administered to him," etc.

The Supreme Court is permitted to fix and has fixed rules for the educational requirements of those who may be admitted to the examination, but so far as we know it has never been said that this was granting legislative authority to the court.

It is provided in reference to physicians by Rev. Stat. 4403 (Lan. 7507), that a board of examiners shall be appointed and that this board shall formulate rules to govern its action.

Revised Statutes 4403c (Lan. 7510), provides in reference to physicians that:

"All examinations shall be conducted under the rules formulated by the board. Each applicant shall be examined in anatomy, physiology, pathology, chemistry, materia medica, and therapeutics, the principles and practice of medicine, surgery, obstetrics, and such other subjects as the board may require. The applicant shall be examined in the materia medica and therapeutics and the principles and practice of medicine, of the school of medicine in which he desires to practice, by the member or members of the board representing such school. If an applicant passes an examination satisfactory to the board, and has paid the fee as hereinafter provided, it shall issue its certificate to that effect," etc. We think it has never been claimed that these provisions constituted a delegation by legislative power to the board of examining physicians.

The provisions of the law in reference to the examination of teachers for our public schools, Rev. Stat. 4070 (Lan. 6661), are that the board of examiners shall make all needful rules and regulations for the

proper discharge of its duties and the conduct of its work, subject to statutory provisions and the approval of the state commissioner of common schools.

Revised Statutes 4071a (Lan. 6663), provides that the questions for all county teachers' examinations throughout the state, shall be prepared and printed under the direction of the state commissioner of common schools. We have never heard it suggested that this was delegating legislative powers to the commissioner of schools. And, under Rev. Stat. 4074 (Lan. 6666), it is provided that the teachers in elementary schools shall be examined on the subjects of orthography, arithmetic, reading, writing, English grammar and composition, geography, history of the United States, including civil government, physiology including narcotics, literature, and that the applicant possesses an adequate knowledge of the theory and practice of teaching.

There is nothing suggested in any of these statutes to the several provisions of which attention has been called that undertakes to fix a standard in any other way than to say that the applicant must show sufficient knowledge upon the several subjects of examination.

Surely there is no good reason why one desiring to operate a steam engine should have a standard of qualification fixed more definitely than one who desires to teach school, or practice medicine or law. The statute under consideration is not subject to the criticism in this regard that the statute considered in the case of *Harmon* v. *State,* *supra,* was subject to.

It is said, however, that Sec. 10 of the act now being considered, which is Rev. Stat. 4364-89u (Lan. 7360), is clearly in contravention of the constitution. That section reads in part:

"Provided, that all persons holding license issued to them under the act of the general assembly of the state of Ohio, passed March 1, 1900 (94 O. L. 33-36), shall not be required to submit to a further examination during the period covered by such license first issued. But such former license shall evidence the qualifications of such person to operate the kind of steam plant, and for the period as therein designated, unless such license is sooner revoked for cause."

Attention is called to Sec. 7 of the act now under consideration, being Rev. Stat. 4364-89r (Lan. 7357), which reads:

"Any person to whom a license is issued under the provisions of this act shall upon application at the expiration of one year from the date thereof be entitled to a renewal thereof for one year, unless the district examiner of his district for the cause or causes set out in sec-

Theobald v. State.

tion 6 [Rev. Stat. 4364-89q; Lan. 7356] of this act, upon notice and hearing, should refuse such renewal.''

Now as to Sec. 10 (Rev. Stat. 4364-89u; Lan. 7360), it may be said, first, that even though this section were held to be unconstitutional, the persons provided for in this section are simply those who at the time the present statute went into effect were holding licenses issued under the former act, and since no such license could extend beyond one year from the time of its issuing, it cannot be supposed that this small period of time for which some were permitted to operate engines after the present act took effect, was an inducing cause for the enactment of the provisions in respect to the examination of those who desired to become engineers. Further than that this act extending the privilege to those who were already licensed under the former act for the short time they would be permitted to operate, is of too small consequence for the courts to say that it is in contravention of the constitution. In any event this has long ceased to be a practical question, for the present statute went into operation on May 1, 1902, and all those permitted under the provisions of Sec. 10 to operate engines have long since lost that privilege. It will be noticed by Sec. 7, hereinbefore quoted, that it is only those who have obtained a license under the present act, who are entitled to a renewal, after examination. Those spoken of in Sec. 10 of the present act are not entitled to such renewal without examination. It is those who have obtained a *license* under the present act who may have a renewal.

It is said in argument that the general construction which has been given to this statute by engineers and examiners is that those who were permitted by this Sec. 10 to continue their occupation until the expiration of the time for which their several licenses were issued, were entitled to have such licenses renewed without examination. Whoever has given it this construction has' done so in violation of a provision of law expressed in language as plain as any language can well make it, and it behooves all engineers to take notice now that they were not entitled to a renewal of their licenses granted under the former act, and it behooves the examiners to take notice that they are not authorized to issue any such renewals. The language of the statute, as has already been said, is so plain that ''a wayfaring man though a fool need not err therein.''

The judgment of the court of common pleas in each of these several cases is affirmed.

**Winch** and **Henry, JJ.,** concur.